## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

RAMON CANDELARIA HERNANDEZ,

      Plaintiff,

v.                                                                      Civ. No. 15-205 JB/GJF

MIKE CARRILLO and
ROBERT ZAMARIPPA,

      Defendants.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Pending before the Court is "The County Defendants' Motion for Summary Judgment and for Qualified Immunity for the Individual Defendants on Plaintiff's Second Amended Complaint and Memorandum in Support Thereof" ("Motion"), filed January 16, 2016.  ECF No. 20.[1] Plaintiff was obligated under the Local Rules to respond not later than February 3, 2016.  *See* D.N.M.LR-Civ. 7.4(a).  Plaintiff did not file a response to the Motion, nor did he request an extension of time to do so.  However, on March 18, 2016, Plaintiff filed a letter advising the Court and Defendants that he had been transferred to the Southern New Mexico Correctional Facility in Las Cruces, New Mexico.  ECF No. 23.  On May 5, 2016, still reluctant to consider Defendants' Motion as unopposed, the Court ordered Plaintiff to show cause not later than May 20, 2016, as to why Defendants' Motion should not be granted pursuant to Local Rule 7.1(b). ECF No. 25.  Despite being provided an opportunity to do so, including an additional seven weeks beyond the May 20th deadline, Plaintiff has filed no response to the Order to Show Cause or to Defendants' Motion.  Consequently, he has not identified any facts proffered by Defendants

---

[1] On March 8, 2016, U.S. District Judge James O. Browning referred this case to the undersigned for recommended findings and disposition.  ECF No. 22.

which he disputes, let alone pointed to evidence in the record to support his side of the dispute. *See* Fed. R. Civ. P. 56; *see also* D.N.M.LR-Civ. 56.1.

Under these circumstances, Plaintiff has waived the right to respond or to controvert the facts asserted in Defendants' Motion. *See Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). Therefore, the undersigned will "accept as true all material facts asserted and properly identified in the summary judgment motion." *Id.*

Having reviewed the record, the Defendants' briefing, and relevant case law, the undersigned **RECOMMENDS** for the following reasons that Defendants' Motion be **GRANTED**.

## I.     FACTUAL BACKGROUND

The Court adopts the following facts as contained in the *Martinez* report, *see* ECF No. 16, and its attachments (ECF No. 16-1 – 16-7) filed by Defendants and to which they specifically refer in their Motion.[2]

Plaintiff is a sex offender who was arrested and booked into the Grant County Detention Center ("GCDC") on October 9, 2014, following his failure to comply with conditions of his parole. *See* Defs' Mot. for Summ. J. 4, ECF No. 20 (setting forth this fact). The GCDC contracted with Healthcare Partners to provide medical services; Plaintiff regularly availed himself of these services. *Id.* (setting forth this fact). Plaintiff's medical records reveal that he had a condition called torus mandibularis[3] since as early as 2008. *Id.* (setting forth this fact).

---

[2] Local Rule 56.1(b) provides:

> The Response must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed. All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.

D.N.M.LR-Civ. 56.1(b). Because Plaintiff does not address these facts, the Court deems them to be undisputed.

[3] Torus mandibularis is defined as a growth that is bony and nodular usually occurring along the lower jaw. It appears on the inner surface of the jaw. When the bony growth occurs on the roof of the mouth or the palate, it is

Thus, Plaintiff had a chronic, non-emergent condition that allegedly caused him discomfort.  *Id.* (setting forth this fact).

On November 26, 2014, Plaintiff began complaining of mouth pain, stating that he gets a "big ball" on the right side of his face every so often.  *See* Defs' Mot. for Summ. J. 5, ECF No. 20 (setting forth this fact).  Thereafter, Plaintiff received treatment for this condition by Healthcare Partners.  *Id.* (setting forth this fact).  On March 16, 2015, the health care providers recommended that Plaintiff be evaluated at the Gila Regional Medical Center for this condition because it had not improved, and he was seen there on March 24, 2015.  *Id.* (setting forth this fact).  There he was diagnosed with torus mandibularis and it was recommended that he be seen by a dentist/oral surgeon for this condition; he was also prescribed pain medication, and his diet was changed to a dental soft diet to alleviate his complaints of difficulty chewing.  *Id.* (setting forth this fact).

It was recommended that Plaintiff obtain a medical furlough because the GCDC healthcare providers do not perform surgeries and the Gila Medical Regional Center does not perform non-emergent oral surgeries.  *Id.* (setting forth this fact).  At a hearing before a state district judge on April 13, 2015, Plaintiff's attorney argued a Motion to Review Conditions of Release; the court inquired whether Plaintiff's attorney had secured an appointment with a provider for this surgery.  *Id.* (setting forth this fact).  When the attorney indicated he had not, the Court indicated that no request for medical furlough would be considered until this appointment had been scheduled.  *Id.* (setting forth this fact).  When Plaintiff continued to complain of pain, medical officers employed by Healthcare Partners attempted to find a provider to perform oral surgery on him,

---

referred to as the patatinus but growth is usually attached to the jaw bone.  It takes various sizes and shapes.  While not everyone may develop torus mandibularis growths, they are not often considered as abnormalities.  *See* Defs' Mot. for Summ. J. 4, filed January 16, 2016, ECF No. 20.

but it was difficult to find a provider who would treat an incarcerated patient.  *Id.* (setting forth this fact).

On May 28, 2015, Dr. Sparks, in Silver City, agreed to treat Plaintiff.  *See* Defs' Mot. for Summ. J. 6, ECF No. 20 (setting forth this fact).  Dr. Sparks evaluated him in her office on June 12, 2015, and she performed surgery on Plaintiff on July 7, 2015.  *Id.* (setting forth this fact). Thereafter, Plaintiff continued to receive medication for his pain and was treated for his nausea and vomiting following his surgery.  *Id.* (setting forth this fact).  On July 14, 2015, a week after his surgery, Plaintiff was treated by GCDC medical staff because he had been playing with his stitches and had removed them.  *Id.* (setting forth this fact).  Plaintiff then had to be sent to the Gila Regional Medical Center to determine whether additional suturing would be necessary.  *Id.* (setting forth this fact).

Though he was receiving pain medication from GCDC medical staff, Plaintiff told Dr. Sparks at a follow up appointment that he had not been provided any pain medication.  *Id.* (setting forth this fact).   In fact, Plaintiff had refused medications on multiple occasions, including certain pain medications.  *Id.* (setting forth this fact).  Plaintiff was found to be in possession of contraband used to snort medication.  *Id.* (setting forth this fact).

The GCDC Continuous Quality Improvement Committee ("Committee") reviewed Plaintiff's medical records and determined that he had 115 medical encounters for assessment, treatment and diagnosis from October 9, 2014 to July 15, 2015.  *Id.* (setting forth this fact).  The Committee also found Plaintiff was non-compliant with his medical treatment during his incarceration at GCDC.  *See* Defs' Mot. for Summ. J. 7, ECF No. 20 (setting forth this fact).

Plaintiff filed only one grievance during this time period at GCDC, which was unrelated to the issues regarding the oral surgery.  *Id.* (setting forth this fact).  He never filed any grievances related to the medical care he received for his oral surgery.  *Id.* (setting forth this fact).

## II.    PROCEDURAL BACKGROUND

On March 9, 2015, Plaintiff filed this action against Health Care Providers, alleging he was denied proper medical treatment while he was in custody at the Grant County Detention Center. *See* Pl.'s Compl., ECF No. 1.  The Complaint [ECF No. 1] did not allege violations under any specific law.   Rather, he asked merely that "justice be done and the defendants be held accountable."  *Id.*   In his Amended Complaint [ECF No. 4], filed May 11, 2015, Plaintiff generally alleged that his civil rights were violated, although he named no individual defendants. *See* Pl.'s Am. Compl., ECF No. 4.   The Court ordered Plaintiff to file another amended complaint containing adequate factual allegations against specific individuals who denied him necessary medical treatment.  *See* Mem. Op. and Order, ECF No. 6.

Plaintiff filed his Second Amended Complaint on August 6, 2015, adding as defendants Mariam Bornaci, Mike Carrillo, and Robert Zamarippa, and terminating Health Care Partners. *See* Pl.'s Second Am. Compl., ECF No. 7.  On August 25, 2015, the Court dismissed Plaintiff's claims against Defendant Bornaci for failure to identify any facts specific to her.  Mem. Op. and Order, ECF No. 8.  The Second Amended Complaint asserts his claim is made pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331.  Pl.'s Second Am. Compl., ECF No. 7.  Plaintiff claims his civil rights were violated under both the United States Constitution and the New Mexico Constitution.  *Id.*

Defendants Mike Carrillo and Robert Zamaripa filed the instant motion on January 16, 2016.  Defs.' Mot. for Summ. J., ECF No. 20.

5

### III.    ISSUES PRESENTED

In their Motion, Defendants assert that they are entitled to relief under any or all of three separate and independent legal bases: (i) Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act; (ii) Defendants are entitled to qualified immunity on the Section 1983 claims; and (iii) Defendants are entitled to judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

#### A.  Legal Standard

"Ordinarily, plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court." *See Porter v. Nussle*, 534 U.S. 516, 523 (2001) (citing *Patsy v. Board of Regents of Fla.*, 457 U.S. 496, 516 (1982)).  However, in the Prison Litigation Reform Act (PLRA) of 1996, Congress expanded the exhaustion requirements for prisoner suits. The Act states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

The purpose of this change to the PLRA was to allow "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 525.  "In some instances, corrective action taken in response to an inmate's grievance might improve some prison administration and satisfy the inmate, thereby obviating the need for litigation.  In other instances, the review might filter out some frivolous claims."  *Id.* (internal citations omitted).  The PLRA's exhaustion requirement applies to all inmate suits about prison life, irrespective of what type of wrong the prisoner is alleging.  *Id.* at 532.

Therefore, this change to the PLRA means "[a]ll available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective." *Id.* at 524 (internal citations omitted).

Failure to exhaust is an affirmative defense under the PLRA. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Thus, inmates are not required to specially plead or demonstrate exhaustion in their complaints. *Id.* "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Id.* at 218. Nonetheless, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211 (citing *Porter*, 534 U.S. at 524).

## B. Analysis

Here, Defendants assert Plaintiff filed only one grievance while incarcerated at GCDC. *See* Defs.' Mot. for Summ. J. 7, ECF No. 20. This grievance, dated December 2, 2014, dealt with an altogether unrelated issue, specifically "an alleged difficulty sleeping due to his alleged anxiety and panic attacks, for which he claims he was not receiving appropriate medication." *Id.* As evidence, Defendants submitted (1) an affidavit from the Assistant Jail Administrator for the GCDC stating that he had reviewed Plaintiff's records and determined that Plaintiff did not submit any grievances to the jail that related to his mouth condition, and (2) copies of grievances Plaintiff submitted to Health Care Partners on their grievance forms, which concerned Plaintiff's inability to sleep well due to anxiety and panic attacks. *See* Suppl. *Martinez* Report 1-5, ECF No. 19-1. The Court treats a *Martinez* report like an affidavit. *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). Plaintiff did not submit any evidence as to exhaustion, nor make any statement in his pleadings that he filed a formal grievance with the prison concerning medical attention for his torus mandibularis condition.

The uncontroverted affidavits and documents submitted by Defendants were sufficient to meet their burden that Plaintiff failed to exhaust his administrative remedies.  Because the failure to exhaust available remedies forecloses a prisoner from filing a federal lawsuit, the undersigned **RECOMMENDS** that this Motion be **GRANTED** for Plaintiff's failure to exhaust, in violation of the Prison Litigation Reform Act.

## V.    QUALIFIED IMMUNITY

### A.  Legal Standard Regarding Section 1983 Claims

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Individual, non-supervisory defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional right by others, and an unforeseeable intervening act has not terminated their liability.  *See Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012).  The Supreme Court has made clear that there is no respondeat superior liability under 42 U.S.C. § 1983.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a

plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution.").

**B. Legal Standard Regarding Qualified Immunity**

Qualified immunity is an affirmative defense that must be pleaded by a government official. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (citing *Gomez v. Toledo*, 446 U.S. 635 (1980)). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action …, assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quoting *Harlow*, 457 U.S. at 818-19).

This immunity balances two important interests – "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The qualified immunity defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity is "an immunity from suit rather than a mere defense to liability … it is effectively lost if a case is erroneously permitted to go to trial." *Pearson*, 555 U.S. at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (internal quotation marks omitted)). One feature of this immunity is that insubstantial claims will be resolved prior to discovery. *Pearson*,

555 U.S. at 231.  "Accordingly, 'we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'"  *Id.* at 232 (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*)).

A defendant is entitled to dismissal before discovery begins unless a plaintiff's allegations "state a claim of violation of clearly established law."  *See Mitchell*, 472 U.S. at 526 (citing *Harlow*, 457 U.S. at 818).

> That means a court can often avoid ruling on the plaintiff's claim that a particular right exists.  If prior case law has not clearly settled the right, and so given officials fair notice of it, the court can simply dismiss the claim for money damages.  The court need never decide whether the plaintiff's claim, even though novel or otherwise unsettled, in fact has merit.

*Camreta v. Greene*, 563 U.S. 692, 705 (2011).  Regarding what constitutes "clearly established law," the Supreme Court has provided the following guidance:

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal citations omitted).

"A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be 'indisputable' and 'unquestioned.'"  *Lobozzo v. Colo. Dep't of Corr.*, 428 F.App'x 707, 710 (10th Cir. 2011) (internal citations omitted).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001).  A court should inquire "whether the law put officials on fair notice that the described conduct was unconstitutional" rather than engage in "a

scavenger hunt for cases with precisely the same facts." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).

The Supreme Court has clarified that the clearly established prong of the qualified immunity test is a very high burden for the plaintiff. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "[A] plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it." *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988) (citing *Anderson*, 435 U.S. 635, 640 n. 2 (1987)). "[B]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." *Harlow*, 457 U.S. at 817-18. "The operation of this standard, however, depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." *Anderson v. Creighton*, 483 U.S. at 639. "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the volatile nature of particular conduct is clearly established." *Ashcroft v. al-Kidd*, 563 U.S. at 742. The level of generality at which the legal rule is defined is important, because qualified immunity shields officers who have "reasonable, but mistaken beliefs," as to the application of law to facts and operates to protect officers from the sometimes "hazy border[s]" of the law. *See Saucier v. Katz*, 533 U.S. 194, 205 (2001).

When a defendant asserts qualified immunity, the plaintiff must demonstrate on the facts alleged: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged misconduct. *See Riggins v.*

*Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).  If the plaintiff fails to meet his burden on the threshold inquiry that defendant's actions violated his or her constitutional or statutory rights, the qualified immunity inquiry comes to an end.  *See Mata v. Saiz*, 427 F.3d 745, 748 (10th Cir. 2005).

### C.  Legal Standard Regarding Deliberate Indifference to Medical Care

"The [Eighth] Amendment also imposes duties on [prison] officials, who must provide humane conditions on confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)) (internal quotation marks omitted).  The term "deliberate indifference" first appeared in *Estelle v. Gamble*, 429 U.S. 97 (1976).  *See Farmer*, 511 U.S. at 835.  In *Estelle*, the Court distinguished "deliberate indifference to serious medical needs of prisoners," from "negligence in diagnosing or treating a medical condition," holding only the former violates the Eighth Amendment.  *Id.*  "We have since read *Estelle* for the proposition that Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"  *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

The Supreme Court in *Estelle* explained deliberate indifference as:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under s. 1983.

*Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (internal citations omitted).  The Supreme Court clarified, however, the conclusion reached in *Estelle* does not mean "that every claim by a

prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment." *Id.* at 106.

"The test for constitutional liability of prison officials 'involves both an objective and a subjective component.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). First, a prisoner must produce objective evidence that the deprivation at issue was "sufficiently serious." *Mata*, 427 F.3d at 751 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "We have said that a medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Sealock*, 218 F.3d at 1209) (internal citations omitted). "[A] delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'" *Id.* (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Id.* (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

Next the prisoner must present evidence of the prison official's culpable state of mind. *Id.* (citing *Estelle*, 429 U.S. at 106).

> The subjective component is satisfied if the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference.

*Id.* (citing *Farmer*, 511 U.S. at 837).

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Id.* at 752.

### D.  Analysis

Against this backdrop, the Court now considers whether Plaintiff's Second Amended Complaint states a cognizable Section 1983 claim, and, if so, whether Defendants are nonetheless entitled to qualified immunity.  In reviewing Plaintiff's pro se complaint, the Court applies the same legal standards applicable to pleadings drafted by counsel but liberally construes the allegations.  *See Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992). Plaintiff makes two claims in his complaint: (i) "under federal and state constitutional violations for the inadequate medical care I am receiving … They have violated my constitutional right to receive medical care" and (ii) "violation of civil right, constitution and neglecting to get me medical care."  Pl.'s Second Am. Compl. 4, ECF No. 7.  Construed under a liberal standard as it is the Court's obligation to do, Plaintiff's claim against Defendant Mike Carrillo, GCDC Administrator is for deliberate indifference to his medical care, in violation of the Eighth Amendment.[4]

To determine if Defendant Carrillo is entitled to qualified immunity, the Court must first decide if Plaintiff has demonstrated on the facts alleged that Defendant Carrillo's actions violated his constitutional rights.  To do so, the Court must determine if Plaintiff's facts as

---

[4] Although the Second Amended Complaint names Robert Zamarippa, the Grant County Clerk, as a defendant, the complaint fails to allege any facts at all against him.  To succeed on a complaint under Section 1983, a plaintiff must allege some personal involvement by a defendant in the constitutional action.  *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).  Because the Second Amended Complaint fails to do so, the undersigned recommends dismissal of Mr. Zamarippa from this lawsuit.

alleged demonstrate whether Defendant Carrillo's actions evidence deliberate indifference to Plaintiff's medical needs, in violation of the Eighth Amendment.

Plaintiff requested medical attention for pain and swelling of a bump inside his mouth. Pl.'s Second Am. Compl. 2, ECF No. 7. This pain was the result of a chronic condition called torus mandibularis, which consists of benign growths along the inside of the lower jaw. Defs' Mot. for Summ. J. 2, ECF No. 20. Upon Plaintiff's first complaint of pain and discomfort, he was put on a treatment plan which included antibiotics, IBU's and Tylenol. Pl.'s Second Am. Compl. 2, ECF No. 7. Plaintiff contends this treatment "did nothing for the pain or swelling of this bump in my mouth…" *Id.* Because his condition had not improved, the health care providers recommended on March 16, 2015 that Plaintiff be evaluated at the Gila Regional Medical Center; he was seen there nine days later, on March 24, 2015. Defs' Mot. for Summ. J. 5, ECF No. 20. After receiving a formal diagnosis for torus mandibularis, Plaintiff was prescribed pain medication, and his diet was changed to a Dental Soft Diet to help alleviate his complaints of difficulty chewing. *Id.* It was also recommended that Plaintiff undergo surgery to alleviate his condition. *Id.*

Plaintiff continued to complain of pain, and the medical staff attempted to find a provider to perform oral surgery on him. *Id.* In May 2015, Dr. Sparks agreed to treat Plaintiff, and Plaintiff was evaluated in her office on June 12, 2015. *Id.* at 6. Less than one month from this evaluation, on July 7, 2015, Plaintiff underwent oral surgery, where Dr. Sparks removed the torus mandibularis. *Id.* Thereafter, Plaintiff continued to receive medication for his pain and was also treated for the side effects he experienced after the surgery. *Id.*

Plaintiff has put forth no evidence that Defendant delayed in meeting his medical needs. In fact, the record paints the exact opposite picture, that Plaintiff had *more than one hundred*

*medical encounters* for assessment, treatment, and diagnosis between the dates of October 9, 2014 to July 15, 2015.  The evidence demonstrates that, far from being deliberately indifferent, Defendant Carrillo (and everyone else involved in the rendering of medical care to Plaintiff) was attentive, concerned, and responsive.  Plaintiff offers utterly no evidence that Defendant Carrillo acted with deliberate indifference towards his medical needs.  Because Plaintiff fails to set forth evidence which demonstrates that Defendant Carrillo's actions caused him substantial harm, the Court finds that Plaintiff cannot meet the objective prong of the Eighth Amendment test. Furthermore, because Plaintiff has proffered nothing beyond bare accusations which the record patently disproves, he also cannot meet the subjective prong of the Eighth Amendment test that required Plaintiff to show that Defendant Carrillo had a culpable state of mind in denying him adequate medical care.  Again, to the contrary, the record shows well more than a good faith effort by Defendant Carrillo (and everyone else) to provide Plaintiff with adequate and timely medical care for his condition.

On the record before the Court, no reasonable fact finder could conclude that Defendant Carrillo acted with deliberate indifference to Plaintiff's medical needs.  Accordingly, Plaintiff has not proven that his rights under the Eighth Amendment have been violated.  Consequently, Plaintiff has not carried his burden of proving that Defendant Carrillo is not entitled to qualified immunity.  Because Plaintiff failed to meet his burden on this threshold inquiry that Defendant's actions violated his constitutional rights, the Court need not address the second prong of the qualified immunity analysis, whether the right was clearly established at the time of the alleged misconduct.  *See Mata v. Saiz*, 427 F.3d 745, 748 (10th Cir. 2005).

Therefore, for the reasons stated above, the undersigned **RECOMMENDS** that Defendant Mike Carrillo be entitled to qualified immunity for all Section 1983 claims asserted against him and these claims should be **DISMISSED** with prejudice.

## VI.    SUMMARY JUDGMENT

### A.  Legal Standard

As an alternative ground for relief, Defendants assert that they are entitled to judgment as a matter of law under the traditional summary judgment standard found in the Federal Rules of Civil Procedure, Rule 56(a).  In relevant part, the rule provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The entry of summary judgment is mandated, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party who will bear the burden of proof at trial on a dispositive issue must designate specific facts showing that there is a genuine issue for trial.  *Id.* at 324.  In order for an issue to be genuine, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If there is not sufficient evidence favoring the nonmoving party, there is no issue for trial.  *Id.* at 249.  Furthermore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. V. Cities Service Co.*, 391 U.S. 253, 289 (1968)) (internal quotation marks omitted).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).  Therefore, if a court can reasonably read the pro se litigant's pleadings to state a valid claim, "it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  *Hall*, 935 F.2d at 1110.  However, "it is not the proper function of the district court to assume the role of advocate for the pro se litigant."  *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).  The court is not to "construct arguments or theories for the plaintiff in the absence of any discussion of those issues."  *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).  The court does not assume the responsibility of "searching the record" in favor of the plaintiff.  *Garrett*, 425 F.3d at 840.  Nor does the plaintiff's pro se status excuse him from the burden of coming forward with evidence to support his claims as required by the Federal Rules of Civil Procedure and the local rules of this court.  *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988).  *See also* D.N.M.LR-Civ. 56(b).  Even a pro se plaintiff must present some "specific factual support" for his allegations.  *See Pueblo Neighborhood Health Ctrs., Inc.*, 847 F.2d at 649.

**B.  Analysis**

Plaintiff claims his constitutional rights were violated and asserts his claim pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331.  Pl.'s Second Am. Compl. 2, ECF No. 7.  He alleges he was denied critical medical care after receiving a diagnosis for torus mandibularis.  *Id.* at 4.

Defendants, through this Motion, as well as the *Martinez* report and exhibits thereto, challenge Plaintiff's allegations.  *See* ECF No. 20; *see also* Defs. Exs. 1-7, ECF No. 16.  Given

18

the overwhelming evidence provided by Defendants, the truth of which Plaintiff is deemed to have accepted by his failure to respond, the undersigned finds that there are no material factual disputes and that no reasonable jury could find in favor of Plaintiff.  The allegations contained in Plaintiff's Second Amended Complaint are directly controverted by the evidence included in the *Martinez* report.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."; *Tellez v. City of Belen*, 560 F.App'x 812, 815 (10th Cir. 2014) (unpublished) (same); *Joint Tech. Inc. v. Weaver*, 567 F.App'x 585, 588 n.3 (10th Cir. 2014) (unpublished) (same); *Pierson v. Bassett*, 534 F.App'x 768, 771 (10th Cir. 2013) (unpublished) (same).   Therefore, the undersigned **RECOMMENDS** that in the alternative, Defendants' Motion be **GRANTED** and that all federal claims in the Second Amended Complaint be **DISMISSED** with prejudice.

### VII.   PLAINTIFF'S STATE LAW CLAIMS

The remnants of the Second Amended Complaint consist of vague allegations that the Defendants also violated Plaintiff's rights under the New Mexico State Constitution.  *See* Pl.'s Second Am. Compl., ECF No. 7.  The Supreme Court has instructed that "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims."  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  Generally speaking, the mere fact that a particular claim is based upon state law will not necessarily preclude federal jurisdiction, as federal district courts maintain supplemental jurisdiction to hear claims related to those over which the court

possesses original jurisdiction.  28 U.S.C. § 1367(a).  A federal court has discretion to decline jurisdiction over a state-law claim in the following circumstances:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Indeed, "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."  *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998)). *See also Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (this circuit has "generally held that if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." (brackets and internal quotation marks omitted)).

Therefore, the undersigned **RECOMMENDS** that Plaintiff's state law claims be **DISMISSED** without prejudice.

## VIII.   CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendants' Motion as to the federal claims be **GRANTED**, and those claims be **DISMISSED WITH PREJUDICE**. The undersigned further **RECOMMENDS** that the Court decline to exercise supplemental jurisdiction as to the remaining state claims, and they be **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO RECOMMENDED.**

_____

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**